**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIEL BRYAN MADSEN,** | **Civil Action No. 20-2395 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **WASHINGTON TOWNSHIP POLICE, et al.,** | |
| **Defendants.** | |

Plaintiff, Daniel Bryan Madsen, proceeding *pro se*, has filed a civil rights action pursuant to 42 U.S.C. § 1983, and an application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a)(1). ECF Nos. 1-2. This matter was originally filed in Eastern District of Pennsylvania and was transferred to this District. ECF Nos. 4-5. This Court previously granted Plaintiff's IFP application. *See* ECF No. 6. The Court has now screened Plaintiff's Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and will dismiss the Complaint in its entirety for the reasons explained in this Memorandum Opinion and permit Plaintiff to submit an Amended Complaint to the extent he can cure the deficiencies in his claims for relief.

### I. FACTUAL BACKGROUND

Plaintiff alleges that on or about March 20, 2018, he spent the night sleeping in the back of his minivan in the parking lot of a strip mall in Washington Township, New Jersey. Complaint at 9. In Plaintiff's IFP application, he states that he lives in his car. ECF No. 1 at 4. In his Complaint, Plaintiff alleges that he slept in his car in the parking lot overnight because he needed to go to a nearby DMV in the morning. At approximately 10:40am, Defendant Corporal Smith ("Defendant Smith") pounded on the window and woke him up. *See id.* Defendant Smith asked Plaintiff why he was parked at a Division of Children Protection and Permanency Office

1

("DCP&P"), and Plaintiff responded that he had no business at the DCP&P and was "just sleeping." *Id.* Officer Smith asked Plaintiff why he was there, and Plaintiff told Defendant Smith that he needed to go to the DMV to get an identification card. *Id.*

Defendant Smith left and went to speak to employees standing outside the DCP&P office, and Plaintiff went back to sleep. *Id.* Defendant Smith returned 20 minutes later and attempted to open Plaintiff's front driver's car door, which was locked. *Id.* Defendant Smith then asked Plaintiff to open his car door, and Plaintiff began to record the encounter on his cell phone. *Id.* Plaintiff refused to open his door and presented his passport through a slightly rolled down window, but Defendant Smith repeated that he should open the door to his car, and told Plaintiff that he could not leave until he spoke with Defendant Smith. *Id.* Plaintiff asked if he was being detained, and Defendant Smith responded in the affirmative. *Id.* Officer Smith kept repeating that Plaintiff should open the car door or roll his window down further and also told Plaintiff he would be arrested when he exited the vehicle. *Id.* at 9-10.

Lieutenant Teter ("Defendant Teter") joined Defendant Smith on the scene and told Plaintiff that the police had received a call about a suspicious vehicle and that Plaintiff was not supposed to be parked at a government agency unless he had business there. *See id.* at 10. Defendant Teter asked Plaintiff one last time to roll down the window or unlock the door and told him he would break the window if Plaintiff did not comply. *Id.* Plaintiff did not exit the car but stated that he would not resist arrest, and Defendant Teter then broke the window, unlocked Plaintiff's car door, pulled Plaintiff out of the car, and told Plaintiff he was under arrest. *Id.*

Plaintiff alleges he did not resist arrest in any way; nevertheless, Officer Christopher Tremel ("Defendant Tremel"), who "is listed" as the arresting officer, allegedly "shoved" Plaintiff against his vehicle when he placed Plaintiff in handcuffs and put him in the back of a

police car.  *See id.*  Plaintiff's also alleges that his minivan was also searched and towed. Plaintiff was held at the police station by Defendant Smith for an unspecified period of time and released.  Plaintiff provides no facts about whether he was charged with any offenses arising from this incident.

In addition to the individual officer defendants, Plaintiff has also sued the Washington Township Police Department and Washington Township in connection with this incident.

## II.    LEGAL STANDARD

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B).  District courts may *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See id.*  According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege a "sufficient factual matter" to show that the claim is facially plausible.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct."  *Iqbal*, 556 U.S. at 678.  Moreover, while courts liberally

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C.§ 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

construe pro se pleadings, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III. <u>ANALYSIS</u>

The Court construes Plaintiff to assert Fourth Amendment claims of unlawful search and seizure, false arrest, and excessive force pursuant to 42 U.S.C. § 1983, as well as claims under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the entity Defendants.  The Court does not construe Plaintiff to raise any state law claims for relief.

The Fourth Amendment protects each person's right not to be subject to "unreasonable searches and seizures."  U.S. Const., Amendment IV.  As the Supreme Court has explained, however, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places." *United States v. Drayton*, 536 U.S. 194, 200 (2002); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ] ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.").  Moreover, where the police simply approach a parked, occupied vehicle and ask the occupant questions—much as they would approach a pedestrian—they need not have any preexisting reasonable suspicion or probable cause.  *See Drayton*, *supra*; *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.").

4

In *United States v. Williams*, 413 F.3d 347 (3d Cir. 2005), for example, four police officers in their marked police cruiser were patrolling a residential neighborhood when they observed a parked van with its rear doors open, and the defendant inside the rear of the van.  *Id.* at 349.  The officers admitted they did not suspect that the defendant was engaged in criminal activity when they approached the van.  *Id.*  The Third Circuit held that the police officers did not initiate a seizure by approaching the van, because the officers did not make a show of authority or use force as they exited their marked police cruiser and walked up to the van.  *Id.* at 352.  Therefore, the officers' approach of the defendant's vehicle did not implicate the Fourth Amendment.  *Id.*; *see also United States v. Maynard*, 152 F. App'x. 191, 194 (3d Cir. 2005) (non-precedential) ("[A]n officer is permitted to approach a car parked on a public street" without initiating a seizure.); *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) ("This Court has decided on several occasions that a police officer does not seize an individual merely by approaching a person in a parked car.") (citations omitted); *United States v. Scott*, 368 F. App'x 392, 394 (4th Cir. 2010) (per curiam) (unpublished) (finding "Fourth Amendment was not implicated when the officers approached [the defendant], roused him, and inquired about his well-being" where "defendant was slumped over in his vehicle at a time and in a neighborhood known for significant illicit drug activity."); *United States v. Townsend*, 206 F. App'x 444, 448 (6th Cir. 2006) (unpublished) (approaching parked vehicle at a gas station in response to a suspicious person complaint where sole occupant appeared to either have fallen asleep or passed out was permissible consensual encounter); *United States v. Foster*, 376 F.3d 577, 581–84 (6th Cir. 2004) (finding no seizure where three uniformed officers approached defendant as he was emerging from a parked car with the engine running and asked him his name, what he was doing, and whether he had identification).  By contrast, in *Couden v. Duffy*, 446 F.3d 483 (3d Cir.

2006), a police officer who did not declare himself to be an officer or show a badge, who drew his gun while approaching the defendant's vehicle, made a show of force that was a seizure under the Fourth Amendment. *Id.* at 494.

Although Plaintiff provides many facts about his initial encounter with Officer Smith, it is clear based on Supreme Court and Third Circuit precedent that <u>no seizure</u> occurred during Plaintiff's first conversation with Officer Smith, as this Defendant was free to approach Plaintiff in his car and ask him questions even without reasonable suspicion.[2]

An individual's Fourth Amendment right is implicated, however, when he or she is no longer "free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (internal marks and citation omitted). An initially consensual interaction becomes a seizure "when a reasonable person would no longer 'feel free to decline the officers' requests or otherwise terminate the encounter.'" *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). A seizure is a restraint of movement by either physical force <u>or</u> a show of authority. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). A seizure begins with "either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (seizure began when, in response to officer's demand that the suspect submit to a pat-down, the suspect submitted to the show of authority by turning to the police car and placing his hands on the car); *see also United States v. Brown*, 334 F.3d 1161, 1163 (D.C. Cir. 2003) (investigative stop began not when officer knocked on car window, but rather when officer opened the car door); *United States v. Brown*, 448 F.3d 239,

---

[2] The fact that Plaintiff purports to be living in his car does not change this Court's analysis.

245-46 (3d Cir. 2006) (officer's seizure of the defendant began when the officer told Brown that he was a suspect for a robbery, ordered him to place his hands on the police car, and "Brown turned to face the police car and placed his hands on the vehicle in response.").  The "objective" test for a "show of authority" is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628.  When an individual refuses to submit to a show of authority, or momentarily complies and then refuses to submit, however, no seizure has occurred.  *See United States v. Valentine*, 232 F.3d 350, 353, 359 (3d Cir. 2000) (defendant did not submit to show of authority when, in response to officers' demand that he place his hands on his car, defendant stopped, told the officers his name, and fled).

The Court assumes for purposes of this Memorandum Opinion that a "seizure" occurred when Officer Smith returned to Plaintiff's car after speaking with the DCP&P employees, attempted to open Plaintiff's car door, and ordered him to get out of the vehicle and/or roll down his window.

Having determined when Plaintiff was seized, the Court turns to whether the seizure was lawful.  An investigative stop or "*Terry* stop" is an exception to the warrant requirement for a lawful seizure.  Under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, an officer may conduct a brief, investigatory stop when that officer has "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  In *Terry*, the Supreme Court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may make "reasonable inquiries" to investigate the behavior.  *Id.* at 30.  Furthermore, if the initial encounter does not

7

dispel the officer's reasonable fear for the safety of himself and others, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id.* Officers are "authorized to take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry ] stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). The reasonableness of the protective measures an officer takes depend "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975).

The reasonableness inquiry, "a pure question of law," *Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016), generally considers "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Reasonable suspicion requires that the officer "articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27); *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) (finding an absence of reasonable suspicion where "the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous"). Conduct that is lawful in some contexts but appears "ambiguous" may give rise to reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citing *Terry*, 392 U.S. at 30) (holding that officers had reasonable suspicion to stop a man in an area known for heavy narcotics trafficking who was carrying an opaque bag and fled immediately upon seeing them); s*ee also United States v. Goodrich*, 450 F.3d 552, 562, 564–65 (3d Cir. 2006) (holding that *Terry* stop

8

was justified where officers observed an individual sitting in a parked car "in the proximity of a recently perpetrated offense," in a high crime area, around midnight).  An mere observation that someone looks "suspicious" is an inadequate basis for reasonable suspicion for a *Terry* stop. *Brown v. Texas*, 443 U.S. 47, 49 (1979).

Plaintiff's appears to assert that Defendants did not have reasonable suspicion to detain him based on the totality of the circumstances.  The Court disagrees.  According to the Complaint, police had received a call from the DCP&P employees about a suspicious vehicle that was parked near the government agency, and  Plaintiff acknowledges that he slept in his vehicle in the parking lot overnight.  When questioned by Defendant Smith, Plaintiff told Defendant Smith he was "just" sleeping in his vehicle, despite the fact that it was already mid-morning, and that he needed to go to the DMV.  Defendant Smith then left and went to speak with the DCP&P employees, and Plaintiff by his own admission, went back to sleep and did not go the DMV.  After speaking to the DCP&P employees, Officer Smith returned to the Plaintiff's minivan to investigate further and ordered Plaintiff to roll down his window or get out of his vehicle.  Under the totality of the circumstances, these facts create reasonable suspicion to support the *Terry* stop.

Plaintiff also appears to allege that Defendants Smith and Teter's violated his Fourth Amendment rights by commanding him to get out of his vehicle.  Police officers may, however, take reasonable steps to avoid unnecessary risks in the course of a *Terry* stop.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (citing *Terry*, 392 U.S. at 23.  The Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.*  In *Mimms*, the Supreme Court held that an officer may order an individual to exit a vehicle during a lawful traffic stop, even in circumstances where the "officer

9

had no reason to suspect foul play from the particular driver at the time of the stop." *Id.* at 109. The "precautionary measure" was justified because the "additional intrusion can only be described as *de minimis*," and a "a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.* at 110–11 (reversing the state supreme court's judgment overturning the defendant's conviction on Fourth Amendment grounds).

Here, the Defendants' commands to get out of the vehicle do not violate the Fourth Amendment and are consistent with the Supreme Court decision in *Mimms*.  It is well-established that this additional minimal intrusion was justified to protect the Officers' safety. Plaintiff also acknowledges that he repeatedly refused to roll down the window, unlock the door, or get out of the vehicle despite the officers' commands and their warnings that they would break the car window, open the door, and remove him from the vehicle if he did not comply.  When Plaintiff repeatedly failed to comply, Defendant Teter then broke Plaintiff's window, opened his car door, and told him he was under arrest.

The Court also construes Plaintiff to assert a claim of false arrest. The elements of a false-arrest claim are (1) that an arrest occurred; and (2) that the arrest was made without probable cause.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).  If "at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law, probable cause is present. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Under *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Moreover, the "subjective

10

reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, Plaintiff provides <u>no facts</u> about the reason (or reasons for his arrest), *i.e.* whether he was arrested for criminal conduct in connection with the DCP&P office, for refusing to comply with the police officer's commands, or some other reason.[3]  Because Plaintiff appears to refer to his arrest report in the Complaint, this omission is puzzling.[4]  Nor does Plaintiff provide any facts about whether he was charged with any offenses arising from this incident.  In order to state a claim for relief, Plaintiff must provide sufficient factual content to suggest that Defendants lacked probable cause to arrest him.  *See Iqbal*, 556 U.S. at 678.  Because Plaintiff has provided insufficient facts to suggest that there was no probable cause for his arrest, the Court will dismiss this claim without prejudice.

The Court also construes Plaintiff to assert a claim for excessive force against Defendant Tremel.  In effectuating a valid stop, police officers are allowed to use a reasonable amount of force.  *Graham v. Connor*, 490 U.S. 386 (1989).  Use of excessive force, however, "is itself an unlawful 'seizure' under the Fourth Amendment."  *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006).  Like his false arrest claim, Plaintiff's excessive force claim fails because has not provided sufficient facts about Defendant Tremel's use of force during his arrest.  Plaintiff briefly alleges that Officer Tremel "shoved" him in the course of placing handcuffs on him,

---

[3] For instance, under New Jersey law, a person commits obstruction if he "purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). A police officer acting in objective good faith is considered to be "lawfully performing an official function." *State v. Reece*, 222 N.J. 154, 171 (2015). "A suspect is required to cooperate with the investigating officer even when the legal underpinning of the police-citizen encounter is questionable." *Id.* at 172.

[4] Plaintiff states in the Complaint that Defendant Tremel "is listed" as the arresting officer.

despite the fact that Plaintiff did not resist arrest.  "Not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *See*

*generally Graham*, 490 U.S. at 396 (quotation marks omitted).  Here, although Plaintiff allegedly

did not resist arrest, he concedes that just prior to the arrest, he was forcibly removed from his

vehicle because he would not comply with the officers' instructions.  And it is unclear whether

the alleged "shove" was a slight push or a more significant blow.  Under these circumstances,

Plaintiff's allegation that he was shoved a single time by Officer Tremel during his arrest is

insufficient to support a claim of excessive force, and the Court will dismiss without prejudice

the excessive force claim.[5]

Plaintiff also challenges the search of his minivan after his arrest.  Under federal law, an

inventory search of a vehicle may be "reasonable" under the Fourth Amendment even though it

is not conducted pursuant to a warrant based upon probable cause.  In *Dakota v. Opperman*, 428

U.S. 364, 368–69 (1976), the Supreme Court assessed the reasonableness of an inventory search

of the glove compartment in an abandoned automobile impounded by the police, and found that

the inventory procedures serve to protect an owner's property while it is in the custody of the

---

[5] It is not clear if Plaintiff also asserts that Defendant Teter's decision to break his car window in order to unlock Plaintiff's door and remove him from his vehicle was a use of excessive force. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  Here, Plaintiff repeatedly refused Defendant Smith and Teter's commands to roll down his window, unlock the car door, or open the car door, and Plaintiff was warned that the officers would break the window to arrest him if he failed to comply.  In light of Plaintiff's continued refusal to cooperate and the repeated warnings, the Court finds that breaking the window was not a use of excessive force, particularly since Plaintiff was not pulled through the window itself.  *See, e.g., Ickes v. Grassmyer*, 704 F. App'x. 190, 193 (3d Cir. Jul. 28, 2017) (Under totality of circumstances, officers did not use excessive force to arrest plaintiff, where they "shattered the front-passenger-side window, unlocked the door," "pulled Ickes out" of the car, "pulled [Ickes] through broken glass and then tackled [Ickes] onto the concrete driveway.")  As such, to the extent Plaintiff asserts that Officer Teter used excessive force when he broke the window, that claim is dismissed without prejudice.

police, to insure against claims of lost, stolen, or vandalized property, and to guard the police

from danger.  In light of these strong governmental interests and the diminished expectation of

privacy in an automobile, the Supreme Court upheld the search; *see also Illinois v. Lafayette*, 462

U.S. 640 (1983) (holding that the inventory search of personal effects of an arrestee at a police

station was also permissible under the Fourth Amendment).

Subsequently, in *Colorado v. Bertine*, 479 U.S. 367, 376 (1987), the Supreme Court

addressed an inventory search subsequent to arrest.  There, a police officer arrested respondent

Steven Lee Bertine for driving while under the influence of alcohol. After Bertine was taken into

custody and before the arrival of a tow truck to take Bertine's van to an impoundment lot, a

backup officer inventoried the contents of the van, which revealed controlled substances, cocaine

paraphernalia, and a large amount of cash in closed containers within the vehicle.  After the

Colorado Supreme Court determined that this search violated the Fourth Amendment, the United

States Supreme Court granted certiorari to decide whether the Fourth Amendment prohibits the

State from proving the charges with the evidence discovered during the inventory of Bertine's

van, and held that it did not, based on the governmental interests outlined in *Opperman* and

*Lafayette*:

> In the present case, as in *Opperman* and *Lafayette*, there was no
> showing that the police, who were following standardized
> procedures, acted in bad faith or for the sole purpose of
> investigation. In addition, In each case, the police were potentially
> responsible for the property taken into their custody. By securing
> the property, the police protected the property from unauthorized
> interference. Knowledge of the precise nature of the property
> helped guard against claims of theft, vandalism, or negligence.
> Such knowledge also helped to avert any danger to police or others
> that may have been posed by the property.

*Id.* at 741–42.

Here, Plaintiff briefly states that his car was searched, but he has not provided any facts suggesting that the officers were acting in bad faith, for the sole purpose of investigation, and/or failed to follow standardized procedures.  Because inventory searches are permitted under the Fourth Amendment without a warrant or probably cause, and given the lack of facts suggesting that the search was improper, the Fourth Amendment claim based on the search of Plaintiff's minivan is dismissed without prejudice.

The Court will also dismiss without prejudice the § 1983 claims as to the Washington Township Police Department, which is not a proper defendant under § 1983.  To recover under § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988). Although a municipality may be liable under § 1983, it is well established that a police department is not a proper defendant under § 1983.  *See PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 825 (D.N.J. 1993) (collecting cases).

The Court will also dismiss without prejudice the claims against Washington Township. Municipal liability under § 1983 may not be asserted under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Municipal liability exists where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury.  *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint.

*See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)).  In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges.  *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).  At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question.  *See id.*

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead a claim based on failure to train (and/or supervise and/or discipline), a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'"  *Estate of Roman,* 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).  Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[6]

---

[6] In some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations."  *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"  *Id.* at 223-24 (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

*Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

Here, the Court has dismissed without prejudice the Fourth Amendment claims against the individual Defendants, and there are no facts to suggest that a specific policy or custom or a failure to train and/or supervise caused the alleged harms at issue.  As such, the *Monell* claims against Washington Township are also dismissed without prejudice.

IV.    **CONCLUSION**

For the reasons explained in this Memorandum and Order, the § 1983 claims are dismissed WITH PREJUDICE as to the Washington Township Police Department, and the § 1983 claims are dismissed WITHOUT PREJUDICE as to the remaining Defendants.  Within 30 days of the date of this Order, Plaintiff may submit an Amended Complaint if he can cure the deficiencies in his claims that the Court has dismissed without prejudice.  An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

DATED: September 2, 2021.